# Stehman's Appeal.

*Construction of will.—Remainders, vested and contingent.—Rule of descent enforced unless clearly altered by will.—Presumption in favour of general rule.*

A testator by will bequeathed the interest of the residue of his estate after sale and payment of debts for the use of his widow for life, with power to draw upon the principal fund, if necessary for her support; with remainder to his granddaughter, and afterwards directed that if she should die under age and without issue, or after arriving at lawful age should die intestate and without issue, then the estate given and bequeathed to her should descend to his heirs under the intestate laws: *Held*, that the interest of the granddaughter vested at the death of the testator: and that after her death, her administrator was, at the death of the widow, who survived her, entitled to the unexpended portion of the bequest.

APPEAL from the Orphans' Court of *York county*.

This was an appeal by Joseph Stehman and others, children of Gertrude Stehman, deceased, John Hursh and wife, and others, children of Elizabeth Brookhart, deceased, Daniel Eply and others, children of Susan Eply, deceased; and John Hoover and wife and others, the children and grandchildren of Barbara Brookhart, Frederick and the other children of Conrad Gram, deceased; and John Grubb and others, the children of Agnes Grubb, deceased, and Susan Gram; which said Gertrude, Elizabeth, Barbara, Conrad, Agnes, and Susan were brothers and sisters of Frederick Gram, late of York county, deceased.

The appeal was taken from the decree of the Orphans' Court,

confirming the report of the auditor, who was appointed to distribute the proceeds of the real estate of said Frederick Gram, which had been sold by order of the court.

The case was this:—Frederick Gram, late of York county, made his will dated on the 9th September 1827, which was proved on the 12th day of October 1827. At the time of his death he left a widow named Elizabeth, and a granddaughter named Elizabeth Eberly; and also brothers and sisters, and the children of brothers and sisters deceased. After the death of testator, William C. Houser, the appellee, married the granddaughter Elizabeth Eberly, but they never had any children, and she (Elizabeth Houser) died about six years since, intestate, and some two years before the death of the widow of Frederick Gram. Elizabeth, the widow of Frederick Gram, died about two years since, having remained a widower. The real estate of Frederick Gram was sold, and the money paid into the Orphans' Court of York county for distribution. The auditor reported that Frederick Gram, the testator, left no other heir at his death but this granddaughter Elizabeth Eberly, named in his will, who was a minor at his death, but who was afterwards married to William C. Houser, and subsequently attained the age of twenty-one years, and died on the 12th day of December, A. D. 1854, aged about thirty years, without issue, and without having made a will, leaving her husband to survive her, and who is still living; that the widow of the testator died in January, A. D. 1861, and after her death the owner of the land, upon which the money was charged, paid the same into court, and that the testator, at the time of his death, left several brothers and sisters and their issue, viz., the appellants, and one brother who had been absent for forty years.

The will of Frederick Gram contained the following provision:—

"I give and bequeath to my beloved wife Elizabeth such of my household furniture, cows, horses, sheep, and swine, and personal estate generally as she may designate and select for her own personal use, within forty days after my decease, of which said property so set apart, designated, and selected by my said wife, no account is to be taken by my executors. It is my will that after my wife shall have so made her selection, my executors shall proceed with all convenient despatch to sell all the residue of my personal property, as also my real estate, and pay and satisfy all my just debts. It is my will, and I order and direct, that the clear balance of my estate shall remain a lien on the mill and plantation where I now live, during the life or widowhood of my said wife. If, however, my executors shall not be able to effect an advantageous sale of the real estate, so as to meet this object, they are authorized to use their discretion in effecting a sale, and

invest the clear balance of the estate in such manner, secured by real estate, as they shall deem best calculated to promote the objects herein mentioned or intended, having a particular regard to the comfort of my wife. I further give and bequeath to my beloved wife Elizabeth, so long as she shall remain my widow, the whole of the interest which shall arise out of my estate, after the same shall be settled by my executors, to be paid to her annually; and in case of the marriage of my said widow, it is my will, and I order and direct, that she shall thenceforth have and receive one moiety or half part only of the interest which shall arise out of my estate as aforesaid. I give and bequeath to my granddaughter Elizabeth Eberly, all the estate which may remain in the hands of my executors at the time of the decease of my widow, to be paid to her as soon as may be after that event. Nevertheless, if my said widow shall marry, then and in that case my executors shall pay over to my granddaughter one moiety or half estate, so soon as she shall arrive at the age of twenty-one years. It is my will, and I order and direct, that if my said granddaughter shall die under age and without issue, or after arriving at lawful age, shall die intestate and without issue, the estate hereby given and bequeathed to her shall descend to and be distributed among my heirs, agreeably to the Intestate Laws of the state of Pennsylvania. It is my will, and my executors are hereby directed, that in case my widow shall find the interest arising out of my estate to be insufficient for the comfortable maintenance of herself and my said granddaughter, they, my said executors, shall advance to my said widow, from time to time, the principal of' my estate such sums of money as may be requisite and necessary to enable her to support herself and granddaughter in ease and comfort. And I do hereby constitute and appoint my friends Jacob Miller and James Prowell, the executors of this my last will and testament. In testimony," &c.

William C. Houser, who, on the 30th day of September, A. D. 1841, was married to Elizabeth Eberly, the granddaughter of the testator, and who now survives her as her husband, claimed the fund on the ground that the money was given to her absolutely by the will, and that the clause in said will, under which the sister and the issue of the deceased brothers and sisters claimed the money, did not give them any right to it, because that clause would create an entailment of the money, or else would only provide for its going over in case Elizabeth did not dispose of it by will, and that, if even the provision for the money going over were good, yet the person designated to take under the character of the testator's heir, according to the Intestate Law, was no other than Elizabeth herself.

The auditor awarded the money to William C. Houser, to which award exceptions were filed for the other legatees of

Frederick Gram; but the Orphans' Court (FISHER, P. J.) held that on the death of the testator, his granddaughter, Elizabeth Eberly, acquired a vested right to receive the amount which might remain unexpended in the hands of his executor at the demise of his wife, which became so fixed and determined that she could have devised or assigned it, and that having done neither in her lifetime, it went to her administrator. With re-gard to the clause in the will which directs the legacy to be paid to the legatee as soon as may be after the death of his wife, the learned judge held that it must be interpreted as vesting it immediately; adding: "As regards the clause in the will which directs that if the said Elizabeth 'shall die under age and with-out lawful issue, or after arriving at lawful age shall die without issue and intestate, the estate hereby given and bequeathed to her shall descend to and be distributed agreeably to the Intes-tate Laws of Pennsylvania,' it is to be observed that the testator speaks of the gift to Elizabeth as an 'estate given and bequeathed,' thereby evidencing that he intended that it should be vested; but independent of this, we think that there are no words used which reduce her estate below a vested one. This clause could have been operative only in the event of Elizabeth's death taking place before that of the testator." The exceptions were therefore dismissed, and the report confirmed.

This appeal was then taken as above stated, and the following errors assigned:—

1. The court erred in not sustaining the exceptions to the auditor's report, and in confirming said report.

2. In awarding the sum of $3871.46 to William C. Houser, and in not distributing said sum among the brothers and sisters, and nephews and nieces of testator and their representatives, as directed in testator's will.

3. In not decreeing the funds in court to the heirs of Frede-rick Gram, deceased, after the death of his granddaughter Eliza-beth (who died intestate and without ever having had a child), as provided for and contemplated by the provisions of testator's will.

4. In disregarding the intention of testator, and the provisions of his will, in making distribution of the fund.

*Keesey, Forry & Miller*, for appellants.

*John L. Mayer*, for appellees.

The opinion of the court was delivered, July 1st 1863, by

LOWRIE, C. J.—After the very able argument and numerous authorities cited by the learned counsel in this case, we may dispose of it without reference to any special cases. He that

9 WR.—26

[*Stehman's Appeal.*]

claims a decedent's estate contrary to the general laws of descent, must show a special testamentary law, that can, with reasonable confidence, be interpreted as changing the general law. Is such a special law shown here? We think not.

In its most general form, this legacy is to the widow for life, with remainder to the testator's sole heir at law and next of kin, his granddaughter. Thus far, after the interest granted to the widow, no change is made in the general law of descent. If the testator had stopped with this provision for his widow, and had said nothing about the remainder, it would have gone to his granddaughter, unless the power given to the widow to use the principal, if she needed it, and thus leave no remainder, should be understood as giving the whole to the widow, a result which no one insists on.

But he gives the remainder to his granddaughter, and afterwards inserts a qualification that if she should die under age and without issue, or intestate and without issue, the remainder is to go to his heirs agreeably to the intestate laws. Die when? In *his* lifetime or in that of the widow, or any future time? He does not say. If the first, it was of course vested on his death. If the last, it was an entailment of personal estate, and therefore vested absolutely on his death. If the second, it was contingent on her surviving the widow, and failed by her not doing so.

We have nothing satisfactory to direct us which of these times he meant, and we must not set aside the general law by guessing at a substitute for it. Two possible interpretations accord with the law of descents, and so do the two facts that the granddaughter has power to bequeath the money, and that she and the grandmother might have used it all in their lifetime.

It seems to us, therefore, that the testator did not intend, by the qualifying clause, to make the interest of his granddaughter contingent; but only to provide heirs for her in case she did not herself dispose of her property. Such provisions are vain, it is true, but nevertheless they are not uncommon, and this idea may solve many anomalous provisions in wills.

Appeal dismissed, at the costs of the appellant.